**Affirmed and Memorandum Opinion filed May 24, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00087-CV

## IN THE INTEREST OF B.O.R., A CHILD

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-02118J**

## MEMORANDUM  OPINION

In this appeal from a judgment terminating the parent-child relationship, the Mother argues in a single issue that the evidence is factually insufficient to support the trial court's finding that termination is in the best interest of the Child. For the reasons given below, we overrule the Mother's argument and affirm the trial court's judgment.

## BACKGROUND

At the time of her birth, the Child tested positive for opiates and cocaine. She was diagnosed with neonatal abstinence syndrome following her exposure to drugs in utero.

The Mother was combative shortly after the Child's birth. The Mother ripped out her own IV line and then left the hospital in a bloody gown and against medical advice so that she could visit a methadone clinic. The Mother left behind no contact numbers where she could be reached.

The Department took the Child into its care when the Child was still at the hospital. The Department later placed the Child with a foster parent, who works as a registered nurse.

The Department created a service plan for the Mother, with the goal of family reunification. But when the Mother failed to comply with all of the terms of that service plan, the Department sought to terminate her parental rights.

A bench trial was held in two nonconsecutive days over a span of about two months. At its conclusion, the trial court rendered a judgment that terminated the Mother's parental rights on the following five predicate grounds: (1) she knowingly placed or allowed the Child to remain in conditions or surroundings which endangered the Child's physical or emotional well-being, *see* Tex. Fam. Code § 161.001(b)(1)(D); (2) she engaged in conduct or knowingly placed the Child with persons who engaged in conduct which endangered the Child's physical or emotional well-being, *see* Tex. Fam. Code § 161.001(b)(1)(E); (3) she constructively abandoned the Child, *see* Tex. Fam. Code § 161.001(b)(1)(N); (4) she failed to comply with the provisions of her court-ordered service plan, *see* Tex. Fam. Code § 161.001(b)(1)(O); and (5) she used a controlled substance in a manner that

2

endangered the health or safety of the Child, *see* Tex. Fam. Code § 161.001(b)(1)(P). The trial court further found that the best interest of the Child was served by terminating the Mother's parental rights and by appointing the Department as the Child's sole managing conservator.

The trial court also terminated the Father's parental rights, but only the Mother has appealed the trial court's judgment.

## ANALYSIS

To terminate the parent-child relationship, the trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the trial court must find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that the parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). If the trial court finds such a predicate ground for termination, the trial court must then find by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

The trial court here found five predicate grounds for termination. The Mother has not challenged any of those grounds, and we need not consider them either.

Mother's sole issue is whether the evidence is factually sufficient to support the trial court's other finding that termination is in the Child's best interest. This finding must be supported by clear and convincing evidence, which is greater than the simple preponderance standard that applies more commonly in civil cases. *Id.* Under the standard for clear and convincing evidence, the measure or degree of proof must produce in the mind of the trier of fact a firm belief or conviction that the allegation sought to be established is true. *See* Tex. Fam. Code § 101.007. This

heightened burden of proof results in a "correspondingly searching standard of appellate review." *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

In a factual-sufficiency review, we give due consideration to both the disputed evidence contrary to the finding as well as of the evidence favoring the finding. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

No specific set of facts is required to establish that termination is in the best interest of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include (1) the desires of the child; (2) the child's emotional and physical needs; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's willingness and ability to provide the child with a safe environment).

***The Child's Desires.*** The trial began shortly after the Child's first birthday. Because of her tender age, there was no direct evidence of the Child's desires.

When there is no direct evidence of a child's desires, the factfinder may consider the child's relationship with her natural family and whether the child has bonded with her foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.— Houston [14th Dist.] 2016, pet. denied).

There was not much evidence of the Child's relationship with her natural family. The Department's caseworker testified that the Mother's visits with the Child went well, but that these visits were eventually suspended when the Child was around nine months old, in part because the Mother was not appearing for the visits, or because she was appearing late. The Mother indicated that she was unable to attend some of the visits because she was experiencing medical problems, including a COVID-19 infection.

The Child's last visit with the Father occurred when the Child was around three months old. The trial court suspended all further visits because the Father was under the influence of drugs at the time of the visit and falling out of his chair while trying to hold the Child. Since that suspension, the Father has not reached out to make any visits.

The Child's paternal grandmother was involved in the case for a time, but she was not willing to be a permanent placement. The Department also had reservations with the grandmother's home study because the Department believed that the Father may be living with the grandmother, or that he visits there frequently, and because the Father has an active drug addiction and a criminal charge for family assault.

The foster parent did not testify, but the caseworker testified that the Child is doing well with the foster parent. The caseworker also indicated that the foster parent was not prepared to adopt the Child, but the foster parent was willing to provide long-term care for the Child until a permanent placement could be found.

5

***The Child's Needs.*** When the Child was born, she was "extremely medically fragile" and "going through major withdrawals" because of her exposure to drugs in utero. After her first birthday, her developmental age was only between six and eight months old.

The Child has special needs, and according to her medical team, she may even have an undiagnosed form of cerebral palsy. The Child sees a speech therapist, an occupational therapist, and a physical therapist twice each week, for a total of six visits every week.

The caseworker opined that the Child's foster parent, who is a registered nurse, is fully able to meet the Child's special needs. The caseworker also opined that the Mother is not capable of meeting even the basic needs of the Child. The caseworker testified that the Mother was given an opportunity to attend one of the Child's medical visits and speak with her therapist, but the Mother did not take advantage of that opportunity.

***Danger to the Child.*** The Mother acknowledged that she has had a history of drug addiction, which has included an abuse of heroin, cocaine, codeine, and morphine. Because of this history, the Mother was ordered to submit to regular drug testing. She originally tested positive for illegal substances, and then according to the caseworker, the Mother stopped submitting to testing altogether.

The Mother gave several explanations. She said that she had tested positive for some substances because she was receiving treatment at a methadone clinic. She also explained that she stopped submitting to some drug tests because she was unable to leave work without getting fired. She claimed that she has tested for drugs at the methadone clinic instead, and that all of her results have been negative. She admitted that she has not provided these test results to the Department, but she said that she

has kept the caseworker informed of her status, which is contrary to the caseworker's testimony.

The Mother also said that she has enrolled in a sobriety program and that she attends NA and AA meetings, but the caseworker indicated that the Mother took these steps after the trial began. The caseworker added that, before the trial, the Mother was unsuccessfully discharged from more than one substance abuse program.

***The Mother's Parental Abilities.*** The caseworker testified that the Mother has completed a parenting class, which was proven through a certificate. But the caseworker also testified that the Mother has three other children, none of whom is under her care. All three of these children are with their respective fathers. There was no evidence of any family members who would be able to assist the Mother in caring for the Child.

***Programs.*** The evidence included references to substance abuse programs, but there was no mention of any other programs that were available to specifically assist the Mother in caring for the Child and promoting the Child's best interests.

***Plans.*** The Department broadcasted the Child's availability for an adoption, but the evidence did not reveal any potential placements. The caseworker testified instead that the foster parent was willing to provide long-term care until a permanent placement could be found.

***Stability of the Mother's Home.*** The caseworker testified that the Mother had not provided any proof of stable housing or income. The caseworker also said that she tried to conduct a home study but was never able to do so because the Mother said that she had an appointment to see her lawyer or she had to go to work.

Controverting the caseworker, the Mother testified that she provided copies of her pay stubs and lease to the Department. The Mother also clarified that she was currently working for Dunkin' Donuts.

***The Mother's Acts or Omissions.*** The Mother complied with a part of her service plan. She completed two different drug assessments. She also went to two psychosocial evaluations, but she was not truthful during the first evaluation. After the second evaluation, she was referred to outpatient treatment, but she was unsuccessfully discharged from that treatment because she stopped attending.

The Mother responded that she has cooperated with the Department. She has participated in the service plan, in court hearings, and in conferences. She indicated that she fell into a postpartum depression, that she lawfully received medications to treat the depression, but that the medications only made her worse.

Altogether, the evidence provided the trial court with a substantial basis for doubting whether the Mother has achieved sobriety, whether she has stable housing and income, and whether she has the capabilities of caring for the Child, who has special medical needs. Viewing all of the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights was in the Child's best interest.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
        Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

8