**Affirmed and Memorandum Opinion filed April 11, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00946-CV

---

## IN THE INTEREST OF H.J.E.Z., B.A.E.Z., J.J.M.E., J.J.E., AND D.D.E., CHILDREN

---

### On Appeal from the 313th District Court
### Harris County, Texas
### Trial Court Cause No. 2022-00066J

---

## MEMORANDUM OPINION

In this appeal from a judgment terminating the parent-child relationship, the Mother argues that the evidence is insufficient to support the trial court's various predicate findings, as well as the trial court's other finding that termination is in the best interest of the children. Because we conclude that the evidence is sufficient to support at least one predicate finding and the best-interest finding, we overrule the Mother's arguments and affirm the trial court's judgment.

## BACKGROUND

This case involves five children. Law enforcement was dispatched to their apartment to conduct a welfare check, and the children were discovered to have been left alone for four days without food or adult supervision.

At the time of the welfare check, all of the children were under the age of ten, and the youngest was slightly more than three months old. All of their clothes were dirty. The three youngest children had soiled diapers. There was urine and feces on the floor of the apartment.

The children were removed from the apartment and assigned to various placements. The First Child and the Second Child were placed together in the same foster home. The Third Child was placed into a different foster home. The Fourth Child and the Fifth Child were placed together in a third foster home.

Criminal charges were brought against the Mother, who spent seven months in jail before posting bond. Upon her release, she frequently missed her scheduled visitations with the children.

The Department moved to terminate the Mother's parental rights on several predicate grounds, and the case proceeded to a nonjury trial. At the end of the first day of trial, the child advocate recommended that the Mother's parental rights should be terminated as to the three younger children, but not as to the two older children. The advocate explained that the two older children were the most bonded with the Mother, and that they needed therapy before the Department proceeded with a termination of the Mother's parental rights.

The trial court agreed with the advocate's recommendation. The trial court then recessed the hearing so that the two older children could receive their therapeutic services.

When the trial reconvened more than two months later, the advocate indicated that the two older children had received the recommended therapy. The advocate then opined that termination of the Mother's parental rights was in their best interest.

The trial court agreed with that opinion and signed a final decree finding that the Department had proven predicate grounds (D), (E), and (O), and that termination of the Mother's parental rights was in the best interest of all five children. *See* Tex. Fam. Code § 161.001(b)(1)(D) (endangerment by environment); Tex. Fam. Code § 161.001(b)(1)(E) (endangerment by conduct); Tex. Fam. Code § 161.001(b)(1)(O) (failure to comply with family service plan).

The Mother now appeals from that judgment.

## THE PREDICATE FINDING

To terminate the parent-child relationship, the trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the trial court must find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that a parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). If the trial court finds such a predicate ground for termination, the trial court must then find by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

The trial court here found three predicate grounds for termination: grounds (D), (E), and (O). And on appeal, the Mother argues that the evidence is legally and factually insufficient to support each of these predicate findings.

We must affirm the trial court's judgment if, in addition to upholding a challenged best-interest finding, the evidence is sufficient to support just a single predicate ground for termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)

3

("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that a termination is in the child's best interest."). But when there are appellate challenges to predicate grounds (D) and (E), as there are here, we must consider whether the evidence is sufficient to support either of those findings first. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (explaining that due process requires a consideration of predicate grounds (D) and (E) because those grounds can have significant collateral consequences for parents in future termination proceedings involving different children).

We begin with the Mother's appellate challenge to the trial court's finding under predicate ground (D).

To support a finding under predicate ground (D), the Department had the burden of showing that the Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *See* Tex. Fam. Code § 161.001(b)(1)(D). The Department was also required to carry this burden by clear and convincing evidence, which is greater than the simple preponderance standard that applies more commonly in civil cases. *See* Tex. Fam. Code § 161.001(b)(2). Under the standard for clear and convincing evidence, the measure or degree of proof must produce in the mind of the trier of fact a firm belief or conviction that the allegation sought to be established is true. *See* Tex. Fam. Code § 101.007. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

When reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or

4

conviction that its finding was true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* However, this standard does not mean that we disregard all evidence that does not support the finding. *Id.* When deciding whether the finding is supported by clear and convincing evidence, we must also consider undisputed evidence contrary to the finding. *Id.*

In a factual-sufficiency review, we give due consideration to both the disputed evidence contrary to the finding as well as all of the evidence favoring the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

The Department's evidence of endangerment consisted of the following testimony from the caseworker:

> Q.  And can you refresh our memory and just summarize briefly the nature of the removal?
>
> A.  Yes. So, law enforcement was contacted to come out to do a welfare check. When they arrived, they noticed that they could hear some children in the home. They were able to get the leasing office to open up the door where they found all five of the children in the home unaccompanied by an adult.
>
> It was reported that the children had been left at the home with no food for four days or adult supervision for four days. The younger three children's diapers were soiled. The children's clothes were dirty. There was no food or formula in the home for the children. And there was an odor of urine and feces, as well as urine and feces on the floor of the apartment.

5

The very same information was conveyed in a removal affidavit, which, though not published or discussed at trial, was also admitted into evidence.

The Mother begins her sufficiency challenge by focusing on the removal affidavit. She acknowledges that the statements in the affidavit, "if proven," are sufficient to satisfy the Department's burden under predicate ground (D), but she argues that the Department did not actually prove those statements because the affiant never testified. The Mother does not cite to any authority for her implied rule that the affiant must testify before her affidavit may be considered. Nor are we aware of any such rule. Because the affidavit was admitted for all purposes, the trial court was free to consider it when making the predicate finding that the Mother knowingly allowed her children to remain in conditions that endangered their physical or emotional well-being.

The Mother argues next that the caseworker's testimony was legally insufficient because the caseworker did not have actual knowledge of the living conditions at the time of the children's removal, nor were there any photographs, police reports, or other evidence corroborating the affiant's statements. Even if true, these points are not dispositive, because the affidavit alone is legally sufficient to support the trial court's finding. *See In re S.N.R.-T.*, No. 14-23-00358-CV, 2023 WL 7498202, at *4 (Tex. App.—Houston [14th Dist.] Nov. 14, 2023, no pet.) (mem. op.) (concluding that the evidence was legally and factually sufficient to support a finding under predicate ground (D) where a removal affidavit described how the mother had left her children without adult supervision for several hours, including one child who was medically fragile).

The Mother also argues that all testimony regarding the living conditions at the time of the removal was conclusory. The Mother does not draw our attention to any particular line of testimony in her brief, which was her burden. *See* Tex. R. App.

6

P. 38.1(i). We note that the affiant described the conditions as "uninhabitable," but that description was not conclusory because the affiant provided the factual basis for her conclusion—namely, the affiant mentioned that there was no food in the apartment and that the floors where the children had been sleeping were soiled with urine and feces.

The Mother does not cite to any disputed evidence or perform any sort of comparative analysis for a factual-sufficiency challenge to predicate ground (D). *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 733 (Tex. 2020) (per curiam) (indicating that a factual-sufficiency challenge should identify countervailing evidence). And our independent review of the record does not reveal any countervailing evidence that the Mother did not leave her children alone for four days without food and in uninhabitable conditions. Absent such disputed evidence, we conclude that the evidence is legally and factually sufficient to support the trial court's finding under predicate ground (D).

This conclusion likewise means that we need not consider the Mother's remaining arguments that the evidence is legally and factually insufficient to support the trial court's other findings under predicate grounds (E) and (O). *See* Tex. R. App. P. 47.1; *In re P.W.*, 579 S.W.3d 713, 728 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

### THE BEST-INTEREST FINDING

We now consider whether the evidence is legally and factually sufficient to support the trial court's other finding that termination of the Mother's parental rights was in the best interest of the children.

No specific set of facts is required to establish that termination is in the best interests of a child, but there are several nonexclusive factors that may guide the

factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include (1) the desires of the child; (2) the child's emotional and physical needs; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's unwillingness and ability to provide the child with a safe environment).

*The Desires of the Children.* None of the five children testified during the trial, but other witnesses gave accounts about the desires of the two older children. By the end of the trial, the caseworker testified that the two older children would be okay remaining with their current placement, though their preference was to return to the Mother. That testimony largely aligned with the testimony of the advocate, though she mentioned that the Second Child was "adamant" about returning to the Mother.

*The Needs of the Children.* The two older children were both diagnosed with anxiety and behavioral disorders. They are each on psychotropic medications.

The Second Child has a learning disability in reading and math. He also has dyslexia. He is receiving Section 504 accommodations in the form of a teacher's aide.

The Third Child was diagnosed with a form of autism. When he first arrived in foster care at age three, he was nonverbal and suffering from global developmental delays. After more than a year of therapy, he has progressed to using two-word phrases. The caseworker testified that the Mother still does not understand the Third Child's special problems or needs.

The Fourth Child and the Fifth Child also had speech delays when they arrived in foster care. They each received various forms of therapy, from which they were successfully discharged. They are both meeting all of their targets.

***Dangers to the Children.*** The most significant danger concerned the stability of the household. At the beginning of the trial, the Mother claimed that she worked a cleaning job, but she had not provided proof of employment. Also, she had not provided proof of stable housing. There was some indication that the Mother was staying with her own mother, but that placement was not considered stable because the Mother's mother was not willing to care for any of the children.

By the end of the trial (after the recess), the child advocate opined that the Mother had lacked motivation to establish her own housing, and that the children would not be safe if they returned to her. The Mother controverted that opinion with testimony that she had just moved into her own apartment within the past week.

***The Mother's Parental Abilities.*** The Mother completed a parenting class, but she did not complete her counseling. She was unsuccessfully discharged from therapy, and her therapist actually opined that she was not taking the necessary steps to get her children back.

Since the five children in this case were removed from her care, the Mother has given birth to another child, but that child is under the care of the Mother's sister.

***Programs.*** There was no mention of any programs available to the Mother to specifically assist her in caring for the children and promoting their best interests.

***Plans.*** There was conflicting information about the plans for the two older children. On the first day of trial, the caseworker testified that the foster mother did not want to adopt the First Child and the Second Child. The Department hoped to submit a legal risk broadcast, in search of an adoptive home for the children. The Department also planned to begin the process of getting green cards for the children. By the end of trial, a little more than two months later, the attorney ad litem represented to the court that the foster parent was "very bonded" with the children— as they were to her too—and that "she would in the future like to adopt them."

There was no conflicting information about the younger children. The testimony established that they were already in adoptive placements.

***Stability of the Home.*** At the end of the trial, the Mother claimed that she had just moved into her own apartment. The caseworker testified that the Mother only had one kid's bed in this apartment. The Mother controverted that testimony, testifying that she had three beds total.

The Mother did not establish that she had a support system of friends or family who could watch the children when she was away. Nor did the Mother provide any explanation for what would happen to the children in the event that she were found guilty of her criminal charges and imprisoned.

There was not much testimony about the stability of the foster placements, other than that the fosters for the First Child and the Second Child have provided structure and routine to their daily lives.

***The Mother's Acts and Omissions.*** There was testimony that the Mother had a weekly visitation plan, but that she "no-showed" several times, both before the trial

10

began and during its two-month long recess. The Mother was told that her absences would sadden and "trigger" the children, but she still continued to no-show. The Mother explained that the reasons for her no-shows were either a lack of transportation or illness.

Even when the Mother would appear for visitation, the caseworker testified that the Mother would mostly pay attention to the younger children, and not have much interaction with the older children. However, the caseworker testified that the Mother would give the older children candy, which the caseworker criticized because the older children had serious dental problems.

Altogether, the evidence provided the trial court with a substantial basis for doubting whether the Mother could provide the children with a safe and stable living environment. Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis, and viewing all of the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights was in the best interest of all five children.

## CONCLUSION

The trial court's judgment is affirmed.


/s/     Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.