**Affirmed and Memorandum Opinion filed January 6, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00463-CV

## IN THE INTEREST OF J.B., A/K/A J.J.B.

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-00057J**

## MEMORANDUM OPINION

The trial court terminated the Mother's parental rights with respect to one of her four sons. The trial court also found that the best interest of the Child would be served by appointing the Foster Parents as managing conservators. Now on appeal, the Mother does not challenge any of the predicate grounds for termination. However, the Mother argues that the evidence is legally and factually insufficient to support the trial court's best-interest findings as to both the termination of her parental rights and the appointment of the Foster Parents as managing conservators. For the reasons given below, we overrule the Mother's arguments and affirm the trial court's judgment.

## BACKGROUND

The Mother has a long history of abusing cocaine. She tested positive for cocaine when her first son was born in 2013, and then again in 2015 when she gave birth to her second son. The Department removed the first son and placed him with his maternal grandmother. The Department removed the second son and placed him with the Foster Parents. In 2016, after the Mother's parental right were terminated with respect to the second son, the Foster Parents adopted the second son.

The Child in this case is the Mother's third son. At the time of his birth in 2019, the Mother did not test positive for cocaine. However, the Mother used cocaine after the Child's birth and during the early stages of her pregnancy with her fourth son, who was born in 2020. Concerning the third son, the Department removed the Child and placed him with a family who fostered him for several months. The Department then placed the Child with a new family headed by the same Foster Parents who had adopted the Child's older brother. The Department also removed the fourth son and placed him with a separate foster family.

The Department filed the instant case, and in its original petition, the Department sought to terminate the Mother's parental rights with respect to the Child, but not with respect to any of her other sons. The Department subsequently abandoned its request for termination because the Department believed that the Mother had successfully completed her court-ordered service plan and was no longer abusing drugs. In an amended petition, the Department sought family reunification as its primary goal. The Foster Parents filed a petition in intervention, seeking termination of the Mother's parental rights and adoption of the Child.

A bench trial was held in five nonconsecutive days over a span of three months. At its conclusion, the trial court terminated the Mother's parental rights based on the following three predicate grounds: (1) she engaged in conduct or

knowingly placed the Child with persons who engaged in conduct which endangered the Child's physical or emotional well-being, *see* Tex. Fam. Code § 161.001(b)(1)(E); (2) she had her parental rights terminated with respect to another child because of conduct in violation of certain statutory criteria, *see* Tex. Fam. Code § 161.001(b)(1)(M); and (3) she failed to comply with the provisions of her court-ordered service plan, *see* Tex. Fam. Code § 161.001(b)(1)(O). The trial court further found that the best interest of the Child was served by terminating the Mother's parental rights and by appointing the Foster Parents as managing conservators.

The Mother now appeals from this judgment.[1]

## TERMINATION

To terminate the parent-child relationship, the trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the trial court must find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that the parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). If the trial court finds such a predicate ground for termination, the trial court must then find by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

---

[1] After the Mother filed her appellant's brief and after the Foster Parents filed their appellees' brief, the Department filed its own brief requesting that we reverse the trial court's judgment. But because the Department did not file a notice of appeal or join in the Mother's notice of appeal, it did not properly invoke this court's jurisdiction. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."); *In re C.A.B.*, 289 S.W.3d 874, 880 n.7 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that the Department's complaint of error was not properly preserved because the Department did not file a statement of points and a notice of appeal). Nevertheless, we note that the arguments in the Department's brief align completely with the arguments in the Mother's brief.

The trial court here found three predicate grounds for termination. One of those grounds was that the Mother has had her parental rights terminated with respect to another child (i.e., her second son). *See* Tex. Fam. Code § 161.001(b)(1)(M). The Mother concedes that there is sufficient evidence to support the trial court's finding under this predicate ground. The Mother suggests that there is no evidence to support the trial court's findings under the other two predicate grounds, but in light of her concession regarding the previous termination of her parental rights, the Mother has explicitly chosen not to contest these other predicate grounds. We need not consider those predicate grounds either, because only one predicate ground is required to support the trial court's judgment. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *see also In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (providing that a review of other certain predicate grounds is required, even if a separate ground is sufficient for termination, but only "when a parent has presented the issue on appeal").

The issue presented here is whether the evidence is legally and factually sufficient to support the trial court's other finding that termination is in the Child's best interest. This finding must be supported by clear and convincing evidence, which is greater than the simple preponderance standard that applies more commonly in civil cases. *See* Tex. Fam. Code § 161.001(b)(2). Under the standard for clear and convincing evidence, the measure or degree of proof must produce in the mind of the trier of fact a firm belief or conviction that the allegation sought to be established is true. *See* Tex. Fam. Code § 101.007. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

4

When reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* This standard does not mean that we disregard all evidence that does not support the finding. *Id.* When deciding whether the finding is supported by clear and convincing evidence, we must also consider undisputed evidence contrary to the finding. *Id.*

In a factual-sufficiency review, we give due consideration to both the disputed evidence contrary to the finding as well as all of the evidence favoring the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The party requesting termination bears the heavy burden of rebutting that presumption. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

No specific set of facts is required to establish that termination is in the best interest of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include (1) the desires of the child; (2) the child's emotional and physical needs; (3) the emotional and

5

physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's willingness and ability to provide the child with a safe environment).

***The Child's Desires.*** Applying these factors to the evidence produced at trial, we begin by observing that the Child was just under two years old when the trial court rendered its judgment, and because of his tender age, there was no direct evidence of the Child's desires.

When there is no direct evidence of a child's desires, the factfinder may consider the child's relationship with his natural family and whether the child has bonded with his foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.— Houston [14th Dist.] 2016, pet. denied). In this case, the Mother testified that her home visits with the Child were "going great." Some of these home visits were attended by the Child's oldest brother (i.e., the Mother's first son), who was in the permanent care of his maternal grandmother. The Department's supervisor testified that the Child and his oldest brother "played very well together," that the Child "warmed up to [his grandmother] pretty quickly," and that the Child appeared "comfortable" with the Mother. The supervisor also added that she had no concerns

6

with allowing the Child to return to the Mother, provided that the Mother abstained from drugs.

The supervisor transported the Child to daycare after some of the home visits, and she testified that she did not observe anything that would indicate that the Child had been traumatized by the Mother. Contravening that testimony, the Foster Mother said that the Child has exhibited unusual behavior after his home visits with the Mother. According to the Foster Mother, the Child was "starving" after his first home visit. And since the visits have started, the Child has not slept very well. He has also become "very clingy" with the Foster Parents and "more demanding of [their] attention."

The Foster Mother also testified that the Child should remain with her own family because the Child had formed a "very, very close" bond with his older brother (i.e., the Mother's second son), whom the Foster Mother had already adopted. The Foster Mother described the two brothers as being "inseparable." She said that the older brother takes the Child by the hand and protects him. "They read books together. They play superheroes together. They play trucks." According to the Foster Mother, the Child "idolizes" his older brother. The trial court could have reasonably determined from this testimony that the Child's attachment to his older brother weighed in favor of termination.

***The Child's Needs and Stability of the Home.*** There was no indication that the Child had any special needs, and the evidence established that the Foster Parents were fully meeting his basic needs. In a permanency report filed with the trial court just a few days before the trial began, the Department represented that the Foster Parents "are appropriate and capable of providing [the Child] with a safe, secure, protective, nurturing environment which meets [the Child's] medical, dental,

7

developmental, educational, emotional and mental needs. All of his social, emotional, medical, dental and psychological needs are being met."

The Mother testified that she was also able to provide for the Child's needs. She said that she had acquired bedding, clothing, and other essential items for the Child. She had found a pediatrician and applied for Medicaid. And, at the beginning of the trial, she also indicated that she had stable housing, where she could both be a stay-at-home mom and also work by providing dispatching services for her boyfriend, who was a long-haul truck driver. But this picture of stability changed over the course of the trial.

The Mother said at the beginning of the trial that her name was on the lease of the apartment that she jointly shared with her boyfriend, but she also testified that the boyfriend was the source of her housing, as well as her income. When the Child was born, this boyfriend had signed an acknowledgement of paternity, but a DNA test subsequently excluded him as the Child's biological father.[2] Just a few weeks before the end of the trial, the boyfriend had removed himself from the apartment, apparently at the Mother's request because he was abusing cocaine. He is now living in Georgia.

Despite his moving out, the boyfriend paid the entirety of the last month's rent on the apartment, and the Department's supervisor testified that she had no assurance that the boyfriend will continue to pay the rent in the future. The Mother also indicated that she still depended on the boyfriend for a portion of her income, even though they were no longer living together. The Mother also indicated that she had accepted a job as a server at a restaurant, but she had only been working there for

---

[2] The trial court still declared that the boyfriend was the Child's father and terminated the boyfriend's parental rights. The boyfriend has not appealed that judgment.

less than one month and had yet to receive any income yet (although income was expected).

Based on this evidence, the trial court had a reason for doubting the stability of the Mother's housing and income.

***Danger to the Child.*** The evidence established that the Mother has struggled for many years with an addiction to cocaine, both before and after the Child was born. The Mother acknowledged that the Child was removed from her home because her addiction endangered the Child's safety. Her initial hair follicle tests also registered levels of cocaine that were so high that they could not be accurately quantified.

However, subsequent hair follicle tests revealed that these cocaine levels gradually decreased over time, which was consistent with an abstention from drugs. The latest hair follicle samples tested negative for cocaine, indicating that the Mother had in fact quit using cocaine.

In addition to this drug testing evidence, there was evidence that the Mother had completed a ninety-day outpatient program and a twelve-week aftercare program. She was also actively attending Narcotics Anonymous meetings.

But there was also evidence that the Mother was not entirely forthcoming with her recovery team. The Mother told her therapist that she had three children, instead of four. The Mother also neglected to mention to her substance abuse counselor that her boyfriend had an addiction to cocaine.

***Parental Abilities of Those Seeking Custody.*** The Foster Parents established that they have parented five children, three of whom are presently adults. They have also taken a parenting class to become certified as foster parents.

The Mother has taken a parenting class as well, including an anger management class, but none of her four children is presently living with her, and she has not parented any of her children for any significant length of time. The Mother also advised her counselor that she had a family support system, but this system included her boyfriend (who abuses cocaine and is no longer living with her), her mother (who did not testify during the trial), and her brother (who testified that he recently moved to the state of Washington).

***Programs and Plans.*** A child advocate testified that she had concerns about the Mother's sobriety, which is why the Department was not prepared to immediately return the Child to the Mother's care. The Department's supervisor testified that she intended to implement a "stairstep" transition plan, which would begin with supervised visits and then progress to unsupervised visits of varying lengths. There was no specific testimony about programs available to assist the Mother in the event she were reunified with the Child.

The Foster Mother testified that she wanted to adopt the Child. She added that she intended to raise the Child to ensure that "he's getting a good education, that he's going to church, [and] that he's surrounded by people who love him and want the best for him."

***Parent's Acts of Omissions.*** A permanency report documented that the Mother failed to appear at several conferences, child visits, and random drug tests. Many of these "no shows" predated the birth of the Mother's fourth son. Since that birth, the Department generally remarked that the Mother appeared as required and completed her court-ordered service plan.

Altogether, the evidence established that the Mother has commendably obtained sobriety, but the evidence also provided the trial court with a substantial basis for doubting whether the Mother's housing and income were stable and

10

whether the Mother remained independent of her drug-addicted boyfriend. The evidence likewise provided the trial court with a substantial basis for believing that the Child should remain with the Foster Parents, who had already adopted the Child's older brother, between whom there was a strong bond. Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis, and viewing all of the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights was in the Child's best interest.

## CONSERVATORSHIP

"If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code § 161.207(a).

Upon the trial court's termination of the Mother's parental rights, the trial court appointed the Foster Parents as the Child's managing conservators. The Mother now challenges whether the evidence is legally and factually sufficient to support that decision.

Unlike a finding to terminate parental rights, which requires proof by clear and convincing evidence, the quantum of evidence required to appoint a nonparent as a conservator is a mere preponderance of the evidence. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The different standards of proof affect the standards of review. *Id.* Conservatorship decisions are reviewed only for an abuse of discretion. *Id.*

Under the standard for abuse of discretion, legal and factual sufficiency of the evidence are not independent grounds of error, but rather are relevant factors in

11

assessing whether the trial court abused is discretion. *See In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414, at \*11 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.). There is no abuse of discretion as long as some evidence of substantive and probative value exists to support the trial court's decision. *Id.*

There is abundant evidence to support the trial court's appointment of the Foster Parents as managing conservators. The Foster Mother testified that her family began fostering the Child shortly after the Child's first birthday. By the end of the trial, the Foster Parents had been caring for the Child continuously for more than eight months. And, as discussed above in our termination analysis, there was evidence that the Child had bonded with his older brother, whom the Foster Parents had adopted, and that the Foster Parents were meeting all of the Child's basic needs and providing him with a stable and nurturing home. Having found that there was sufficient evidence to support the best-interest finding as to the termination of the Mother's parental rights, we likewise conclude that the trial court had sufficient evidence upon which to exercise its discretion in appointing the Foster Parents as managing conservators. *See In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (finding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights).

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
       Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

12