**Affirmed and Memorandum Opinion filed March 29, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00552-CV

**L.B., Appellant**

**V.**

**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,**
**Appellee**

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-DCV-269944**

## MEMORANDUM OPINION

Mother appeals the trial court's final order terminating her parental rights as to her Child. On appeal, Mother does not challenge any of the predicate grounds for termination. She challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in Child's best interest. We affirm.

## Background

Child tested positive for PCP when he was born. A few days later, the Department of Family and Protective Services was appointed Child's temporary managing conservator on an emergency basis. The Department's caseworker developed a family plan of service for Mother, but Mother was incarcerated for several months after child was born and did not participate in the plan during that time. After Mother was released from confinement, she only completed a few services required under the plan. Mother never submitted to monthly drug screenings that were requested by the Department. According to the caseworker, Mother attended about half the scheduled virtual weekly visits with Child, although Mother testified that she only missed one visit.

Four months before the trial in this case, Mother gave birth to another child who tested positive for PCP and cocaine. One month later, Mother again became incarcerated and was still incarcerated at the time of trial. Mother also had pending criminal charges at the time of trial, a pending motion for adjudication of guilt in a deferred adjudication case involving injury to one of Mother's other children, and a criminal record showing that Mother had been found guilty of criminal trespass, was placed on deferred adjudication for evading arrest, and had been indicted for aggravated robbery with a deadly weapon. Mother testified that she had been diagnosed with bipolar disorder and schizophrenia but was not taking any medication for these conditions.

Child lived with the same foster family from the time he was discharged from the hospital following his birth until the time of trial. The foster mother testified that Child has a strong bond with his foster family and they wish to adopt him. The caseworker testified that the Department's permanency goal for Child is adoption by the foster family and that Child is "happy, healthy [and] extremely bonded to the

2

foster parents and the kids in the home." Child's court appointed special advocate also opined that he believed Child was becoming attached to his foster family and adoption by the foster family was in Child's best interest. Mother wanted to be appointed as a conservator so that she could be a part of Child's life and "to let him know I am his mother and I'm always there for him." The trial court terminated Mother's parental rights, finding that termination of the parent-child relationship was in the best interest of Child.

### *Best Interest Finding*

On appeal, Mother challenges only the trial court's best-interest finding. To terminate the parent-child relationship, a trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The trial court must find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that the parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). After finding a predicate ground for termination, the trial court must determine whether there is clear and convincing evidence that termination is in the child's best interest. *Id.* § 161.001(b)(2). The trial court found seven predicate grounds for termination. Mother concedes that there is sufficient evidence to support the trial court's findings as to the predicate grounds. The issue presented is whether the evidence is legally and factually sufficient to support the trial court's finding that termination is in Child's best interest.

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re S.R.*, 452 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The child's emotional and

3

physical interests must not be sacrificed merely to preserve the parent's rights. *Id.*

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to clear and convincing evidence. *See* Tex. Fam. Code § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d at 358. "But the constitutional and statutory requirement that parental rights cannot be terminated unless grounds for termination are established by clear and convincing evidence necessarily means that the ultimate burden of proof based on clear and convincing evidence remains with the party seeking to terminate the parental rights." *In re L.M.I.*, 119 S.W.3d 707, 720 (Tex. 2003) (Owen, J., concurring in part and dissenting in part).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266. We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence a reasonable factfinder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a

factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d at 712.

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The party requesting termination bears the heavy burden of rebutting that presumption. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). No specific set of facts is required to establish that termination is in the best interest of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to

consider in evaluating a parent's willingness and ability to provide the child with a safe environment).

### A. Child's Desires, Plans for Child by Individuals Seeking Custody, and Stability of Proposed Home or Placement

Child was just under two years old when the trial court rendered its final order, and because of his tender age, there was no direct evidence of his desires. When there is no direct evidence of a child's desires, the factfinder may consider the child's relationship with his natural family and whether the child has bonded with his foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A child's need for permanence through the establishment of a "stable, permanent home" has also been recognized as the paramount consideration in the best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

In this case, Mother was incarcerated for most of Child's life up to the time of trial. Mother testified that she attended all the scheduled virtual visits that started after she was initially released from jail except for one visit because she was late. Mother thought Child had bonded with her because he smiled and seemed happy during their visits. The caseworker testified, however, that Mother attended only about half of the scheduled visits, although she noted that some of the missed visits were due to computer or Department issues. The caseworker did not believe that Child had bonded with Mother. Child's advocate testified that he attended three virtual visits to observe Mother interact with Child but Mother did not show up for any of those visits.

Child's foster mother testified that Child is "very attached" to his foster

6

family. She stated, "he calls me mom. He kisses me and hugs me. Grabs my face. He is just very loving towards me" and "is very attached to" his foster father as well. The foster family wants to adopt child "because we are his parents. We love him. We treat him as our own son already. [H]e is just family." The caseworker likewise testified that Child has "done wonderful. He's bonded to the family. He is happy, healthy. That's the only place he has ever known. So, he is extremely bonded to the foster parents and the [other] kids in the home." Child's advocate testified that Child was forming an attachment to his foster family, "he is kind of feeling safe and secure with his caretakers and that . . . helps him develop mentally and emotionally. [T]hat permanency is something that's needed for that secure attachment."

The Department's recommendation for Child is adoption by the foster family. The foster parents have two children and four foster children, including Child. Child has only ever lived with the foster family. The foster mother testified, "We're very bonded and we are committed to him. So, I feel that we're able to meet his needs."

As for stability and permanency with Mother, Mother did not ask for primary custody and conceded that she might not be able to provide a safe environment for Child because she might lose her apartment due to her incarceration. Mother wanted Child to be placed with family members, but the caseworker testified that the Department determined there were no potential caregivers in Child's biological family who could provide a home for Child.

**B. Present and Future Physical and Emotional Needs of and Danger to Child**

A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re K.T.E.*, No. 14-18-00897-CV, 2019 WL 1119756, at *7 (Tex. App.—Houston [14th Dist.] Mar. 12, 2019, pet. denied) (mem. op.). The factfinder may infer from past conduct

7

endangering the child's wellbeing that similar conduct will recur if the child is returned to the parent. *Id*.

Child was born with severe acid reflux, possibly resulting from the PCP in his system, which required him to see a pediatrician weekly and then a specialist. At the time of trial, Child was on medication and special formula for the acid reflux. The foster family was able to meet Child's medical needs. Child was happy and healthy in his foster home.

Moreover, Mother's drug use, criminal history, incarcerations, and resulting absence from Child's life shows a course of conduct from which the factfinder could have determined that Mother endangered Child's emotional and physical wellbeing. *See id*. Mother also refused drug screenings requested by the Department, and Child's sister was born with PCP and cocaine in her system more than a year after Child was removed by the Department, which established that Mother continued to use drugs after Child was born.

Mother further demonstrated an inability to care for her children. By the time of trial, Mother had seven living children, none of whom were in her care. The caseworker testified that Mother "seems to be unstable a lot of times when I talk to her. [S]he [has] called me screaming and hollering[.] At one point, she seemed to think that [Child] was sleeping at the [Department] office by himself. So, just disturbing behavior." Mother has been diagnosed with bipolar disorder and schizophrenia but was not receiving treatment or on medication at the time of trial.

## C. Acts or Omissions of Parent and Any Excuses

As mentioned, Child and his sister both tested positive for PCP at birth, and Child's sister also tested positive for cocaine. Mother offered no excuses for her drug use during pregnancy except to blame the father of her children for being a bad influence. Mother also refused to submit to drug screening. The caseworker testified

8

that Mother failed to comply with many aspects of the family service plan even after Mother was no longer incarcerated. Mother was completely absent from Child's life for ten months due to her incarceration and had multiple pending criminal cases for violations of terms of community supervision and new offenses that occurred after Child was born.

### D. Balancing the Factors

The best interest factors weigh in favor of the trial court's finding that termination of Mother's parental rights was in the best interest of Child. The record supports the following findings: (1) the Department has plans for Child to be adopted into a stable and permanent home; (2) the present physical and emotional needs of Child were being met and would continue to be met; (3) Child would be in danger both physically and emotionally in Mother's care; and (4) Mother offered no excuses for her acts and omissions other than to blame Child's father. On appeal, Mother asks to be a possessory conservator with the right only "to be informed of the health, education and welfare of the child." *See* Tex. Fam. Code § 153.072 ("The court may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child."). Mother contends that this outcome would also benefit Child if he ever wanted to locate his birth parents. However, on this record, the trial court reasonably could have concluded that Child's need for permanency and stability outweighed Mother's need to remain informed about Child. Viewing the evidence in the light most favorable to the judgment for legal sufficiency and weighing the evidence equally for factual sufficiency, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in Child's best interest.

*Conclusion*

We affirm the trial court's final order of termination.

/s/     Frances Bourliot
          Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.