**Affirmed and Memorandum Opinion filed January 10, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00644-CV

## IN THE INTEREST OF J.J.B. AND M.D.H., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2019-04176J**

## MEMORANDUM OPINION

In this appeal from a judgment terminating the parent-child relationship, the Mother argues that the evidence is insufficient to support the trial court's predicate finding that she failed to comply with the terms of her service plan, as well as the trial court's other finding that termination was in the best interest of her children. For the reasons given below, we overrule both of these arguments and affirm the trial court's judgment.

## BACKGROUND

The Mother has four children. The two older children (the First Child and the Second Child) are in the managing conservatorship of their maternal grandparents. The two younger children (the Third Child and the Fourth Child) are the subject of this termination action.

The action began shortly after the birth of the Fourth Child. The maternal grandmother contacted the Department when the Mother was still in the hospital and expressed a concern that the Mother did not have a safe place to live. The maternal grandmother also advised the Department that she would not house the Mother because the Mother has a history of being disruptive and combative.

Subsequent investigations by the Department indicated that the Mother could not provide for the children. The investigations revealed that the Mother did not have stable income or housing. The investigations also revealed a history of other personal struggles. There was evidence that the Mother abused alcohol, marijuana, and other more serious substances. She suffered from mental illness, including diagnoses for PTSD, panic disorder, and anxiety. Her behavior was erratic. She was both a victim and a perpetrator of domestic violence. And she did not cooperate with the Department in previous cases involving her older children. For all of these reasons, the Department sought an emergency order removing the two younger children from the Mother's care, which the trial court granted.

The two younger children were eventually placed with the paternal grandmother of the Third Child. The Mother was then given a family service plan, with the goal of reunification. The Department later moved to terminate the Mother's parental rights, after she allegedly failed to comply with the terms of her service plan, among other reasons.

2

A nonjury trial was held over three consecutive days. At the end of that trial, the Department requested termination under predicate grounds (E), (O), and (P). *See* Tex. Fam. Code § 161.001(b)(1)(E) (engaging in conduct or placing the child with persons who engage in conduct that endangers the child's physical or emotional well-being); Tex. Fam. Code § 161.001(b)(1)(O) (failing to comply with the provisions of a court-ordered service plan); Tex. Fam. Code § 161.001(b)(1)(P) (using a controlled substance in a manner that endangers the health or safety of the child). The trial court entered a written judgment finding that the Department had proven predicate grounds (O) and (P), and that termination was in the best interest of the Third Child and the Fourth Child.

The Mother now appeals from that judgment.

## PREDICATE FINDING

To terminate the parent-child relationship, the trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the trial court must find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that a parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). If the trial court finds such a predicate ground for termination, the trial court must then find by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

The trial court here found two predicate grounds for termination: grounds (O) and (P). Each of those grounds was sufficient by itself to support the trial court's judgment. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). As the party seeking to reverse that judgment, the Mother was required to challenge both

3

independent grounds. But in her appellant's brief, the Mother has only challenged whether the evidence is legally and factually sufficient to support the trial court's finding of predicate ground (O). She has not made any challenge as to the trial court's separate finding of predicate ground (P). Because we are bound by the unchallenged finding of predicate ground (P), we could summarily overrule her argument concerning predicate ground (O). *See In re K.L.G.*, No. 14-09-00403-CV, 2009 WL 3295018, at *2 (Tex. App.—Houston [14th Dist.] Oct. 15, 2009, no pet.) (mem. op.) ("Therefore, the unchallenged findings that termination is supported by section 161.001(1)(Q) and termination is in K.L.G.'s best interest are binding, and the judgment of termination may be supported without considering the other statutory predicate grounds."). But even if we assumed for the sake of argument that the Mother had challenged the finding under predicate ground (P) and that there was no evidence to support it, we would still conclude that her challenge to predicate ground (O) must fail, as explained below.

To support a finding under predicate ground (O), the Department had the burden of showing that the Mother had failed to comply with the terms of her court-ordered service plan. The Department was also required to carry this burden by clear and convincing evidence, which is greater than the simple preponderance standard that applies more commonly in civil cases. *See* Tex. Fam. Code § 161.001(b)(2). Under the standard for clear and convincing evidence, the measure or degree of proof must produce in the mind of the trier of fact a firm belief or conviction that the allegation sought to be established is true. *See* Tex. Fam. Code § 101.007. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

When reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to

determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* This standard does not mean that we disregard all evidence that does not support the finding. *Id.* When deciding whether the finding is supported by clear and convincing evidence, we must also consider undisputed evidence contrary to the finding. *Id.*

In a factual-sufficiency review, we give due consideration to both the disputed evidence contrary to the finding as well as all of the evidence favoring the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction.

The service plan here contained a number of terms, including the following:

- The Mother "will acquire and maintain a legal form of employment and provide documentation in the form of a paycheck stub to the caseworker. Employment must be maintained and stable for more than 6 months."

- The Mother "will acquire and maintain housing that is stable for more than 6 months."

- The Mother "will participate in 6-8 week parenting class."

- The Mother "will refrain from engaging in any illegal criminal activities," and she "will notify the CPS worker within 24 hours of any pending criminal charges or arrests throughout the course of this suit."

- The Mother "will attend and participate in individual counseling to address the issues leading to the child(ren)'s removal from the home."

- The Mother "will attend, actively participate in, and successfully complete domestic violence classes."

- The Mother "will attend, participate, and complete a psychological evaluation with parenting assessment and follow all recommendations for treatment."

- The Mother "will fully participate in and successfully complete a psychiatric evaluation to assess her behavior and personality," and she "will take all psychiatric medication as prescribed by her doctor and show proof of medication refills."

- The Mother "will submit to random urine analysis, hair follicle testings, and ETG testing and all must be negative."

- The Mother "will attend, participate, and complete an inpatient drug and alcohol treatment program prior to beginning any other services."

There was affirmative evidence that the Mother complied with some of these terms. The caseworker testified that the Mother completed the psychological evaluation, as well as the parenting class, and that the Mother was successfully discharged from the inpatient substance abuse program. However, there was also affirmative evidence that the Mother had failed to comply with other terms. For example, the caseworker testified that the Mother had not demonstrated stable income or housing. Testimony from the Mother tended to corroborate that point. At the beginning of the trial, the Mother indicated that she was working as a caretaker and living in the apartment of her patient. But by the end of the trial, the Mother testified that she had ended her last job at a restaurant, that she was currently

anticipating two new caretaker positions, and that she had just recently found housing in a domestic violence shelter. The caseworker also testified that the Mother had failed to submit to random drug tests, and that the Mother had failed to notify the Department about a pending criminal charge. All of this evidence supports the trial's finding under predicate ground (O).

The Mother counters that the evidence is insufficient because she suffers from mental illnesses and she did not understand the terms of her service plan. The record only supports part of this argument. There is ample evidence that the Mother has struggled with her mental health, but we are aware of no evidence—and the Mother has cited to none—that she affirmatively misunderstood the terms of her service plan. To the contrary, there was affirmative evidence that the Mother knew what was expected of her under the service plan. A recital in a status hearing order states that the Mother "has reviewed, signed and understands the service plan." Also, the service plan itself was written in clear and simple language, and its provisions were phrased as positive mandates, not as mere requests. *See In re A.L.R.*, 646 S.W.3d 833, 837–38 (Tex. 2022) (per curiam). And the Mother completed some of her services, which supports an implied finding that she understood what the service plan required.

Considered in the light most favorable to the judgment, the evidence is legally sufficient to support the trial court's finding that termination of the Mother's parental rights was justified because the Mother had failed to comply with the terms of her service plan. Further, in view of the entire record, we conclude that any disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted because of the Mother's noncompliance. Accordingly, we conclude that the evidence is legally and factually sufficient to support the trial court's finding. *See In re C.A.L.*, No. 14-21-00543-CV,

2022 WL 553168, at *5–6 (Tex. App.—Houston [14th Dist.] Feb. 24, 2022, no pet.) (mem. op.) (affirming a termination for failing to comply with a court-ordered service plan).

## BEST INTERESTS OF THE CHILDREN

No specific set of facts is required to establish that termination is in the best interests of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include (1) the desires of the child; (2) the child's emotional and physical needs; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's willingness and ability to provide the child with a safe environment).

***The Children's Desires.*** When the trial ended, the Third Child was four years old, and the Fourth Child was nearly three years old. Because neither child testified, there was no direct evidence of their desires.

When there is no direct evidence of a child's desires, the factfinder may consider the child's relationship with his natural family and whether the child has

bonded with his foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

There was not much evidence of the children's relationship with the Mother. The caseworker testified that the Mother's visits with the children were "mostly appropriate," but that the Mother "seems like she is unable to deal with the children's behavior." The caseworker opined that the Mother focuses most of her attention on the Third Child during their visitations.

The child advocate testified that the children are doing extremely well with their current placement, who is the Third Child's paternal grandmother. The advocate opined that the paternal grandmother is doing an excellent job, and that the Third Child has shown reduced signs of aggressiveness. The advocate also opined that the children are bonding with each other.

***The Children's Needs.*** The children do not have any special needs. The caseworker testified that their current placement is meeting all of their emotional and physical needs.

***Danger to the Children.*** There was evidence that the Mother has struggled with substance abuse. Affidavit testimony established that she abused alcohol to reduce her stress, and that the alcohol would make her appear "groggy" and like a "zombie." During one drinking episode, she neglected to bathe her children for five days.

The Mother admitted to having a history of smoking marijuana. She claimed that she smoked marijuana until she was three months along in her pregnancy with the Fourth Child, which was when she discovered that she was pregnant. The Mother denied smoking marijuana thereafter, but there was testimony that the Mother hid

9

the Fourth Child's diaper from the hospital, and that she refused to have his meconium tested. The Mother responded that this testimony was lies.

A hair follicle test detected the presence of cocaine. The Mother denied that she had ever abused cocaine in her lifetime. She asserted that she "basically came into contact with it, like, through it being airborne because of the apartment that [she] had went into."

There was additional testimony that the Mother had failed to submit to random drug tests. The Mother explained that she was unaware of the drug tests because she was not properly notified. She said that she had set up her phone to filter out text messages from certain numbers, and that the Department had never tried calling her instead.

The Mother successfully completed an inpatient substance abuse program, but she tested positive for illegal substances thereafter, and she was unsuccessfully discharged from individual therapy. Based on that testimony, the trial court could have reasonably concluded that the Mother's history of substance abuse might be repeated in the future, which could endanger the children.

In addition to the substance abuse, the Mother has a history of domestic violence. At the time of trial, the Mother was married to the father of the Third Child, but her husband was estranged and living in another state. The Mother still asserted that her husband made her uncomfortable, and she wanted a protective order against him. The Mother also indicated that the father of the Fourth Child was arrested for choking her. The trial court could have reasonably concluded that this history of domestic violence might also endanger the children.

Finally, the Mother has a history of mental health disorders. The Mother claimed that she has suffered from PTSD ever since she was placed into CPS custody

as a child. She also said that she has been diagnosed with panic disorder and anxiety, for which she has been prescribed medications.

There was testimony about one recent incident that led to a psychiatric hospitalization. According to the Mother, she was visiting her parents (i.e., the children's maternal grandparents) when the Second Child wanted to sleep with her. The maternal grandmother opposed that sleeping arrangement, and a verbal fight escalated into a physical altercation. According to the maternal grandfather, the family was ushered into a secured bedroom, with the Mother excluded, but the Mother broke down the door and busted part of the frame. The Mother then threatened to shoot everybody, including the family dog, and burn the house down.

The Mother left the house after the police were called. She later testified that the allegations against her were lies, and that her family had fabricated the entire incident to divert attention away from the maternal grandfather, who had allegedly assaulted her. The trial court was not required to credit the Mother's version of events. The court could have reasonably accepted the maternal grandparents' version that the Mother was disruptive and combative.

***The Mother's Parental Abilities.*** The Mother has completed a parenting class, but she has not parented her children for very long. Following CPS involvement, the Mother lost custody of the First Child when he was eighteen months old, and she lost custody of the Second Child when she was four days old. Those older children have lived with their maternal grandparents ever since, for more than ten years.

The Mother was supposed to regain custody of the older children, but according to the maternal grandfather, the Mother has never demonstrated that she can provide for basics like shelter and food. She has no income or reliable

transportation either. The maternal grandmother also added that the First Child and the Second Child are "really afraid" of the Mother.

The Mother asserted that her older children are living in a bad environment because the maternal grandmother is "psychotic." But the Mother has never attempted to modify the terms of their conservatorship.

The Mother lost custody of the Third Child when he was twenty months old, and she lost custody of the Fourth Child shortly after he was born. The child advocate recommended that her rights should be terminated as to both of the younger children because she cannot provide for their basic needs. The advocate expressed opposition to an alternative situation short of termination, like restricted visitation, because the Mother demonstrated that she does not follow instructions very well.

***Programs.*** The evidence included references to substance abuse programs, but there was no mention of any other programs that were available to assist the Mother in caring for the children and promoting the children's best interests.

***Plans.*** The Third Child and the Fourth Child are currently under the care of the Third Child's paternal grandmother, who testified that she intends to adopt both children, even though she has no biological relationship with the Fourth Child. She indicated that the children are bonded, and that she does not believe that she could co-parent the children with the Mother, who has accused her of abuse. The Department did not indicate that any abuse had actually occurred. To the contrary, the Department presented evidence that the Third Child's paternal grandmother is licensed and meeting all of the children's needs.

***Stability of the Mother's Home.*** The Mother admitted that her lifestyle has not always been stable. Her housing situation has been in flux. There was evidence that she lived in an apartment, where she was caring for a patient, but that she

eventually moved in with her parents. Then she started living in a hotel, and then most recently in a domestic violence shelter. The Mother indicated that she has a lease for a house, but the Mother admitted that the house is under renovation and not presently habitable.

There was also evidence that the Mother has not kept stable employment. There was testimony that the Mother had worked as an in-home caregiver and that she had also worked at a restaurant, but by the end of trial, she did not have either of those jobs. She anticipated that she might find work in two new caregiver positions.

The Mother also indicated that she has had frequent medical hospitalizations. She suffered a serious burn injury when she was younger, and then she was struck in an auto-pedestrian accident. Both of those occurrences have required pain management. She also suffers from chronic kidney problems, esophageal ulcers, and a painful skin condition, supposedly unrelated to the burn injury. The Mother believes that these physical conditions, in addition to her mental health disorders, have affected her ability to find stable housing and employment. There was evidence that the Mother had initiated an application for disability payments, but she did not complete it.

***The Mother's Acts and Omissions.*** The Mother failed to notify the Department about a pending criminal charge against her for driving while intoxicated. If convicted of that offense and required to go to jail, the Mother did not have any definitive plans for who would care for the children, if they were returned to her. The Mother suggested that a friend might be able to care for the children, but even though the friend testified during the trial, the friend was never asked about her willingness or ability to care for the children. The friend primarily just testified about the Mother's volatile relationship with the maternal grandmother.

13

Altogether, the evidence provided the trial court with a substantial basis for doubting whether the Mother's housing and income were stable, and whether she had the ability to care for the Third Child and the Fourth Child. Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis, and viewing all of the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights was in the best interest of her younger children.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.