**Affirmed and Memorandum Opinion filed November 21, 2024.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-24-00444-CV

_____

## IN THE INTEREST OF A.S.R. A/K/A A.R., A CHILD

_____

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-01096J**

_____

## MEMORANDUM OPINION

In this appeal from a judgment terminating the parent-child relationship, the Mother argues in several issues that the judgment should be reversed because the trial court never made certain findings, or alternatively, because the evidence is insufficient to support the affirmative findings that the trial court otherwise made. For the reasons given below, we overrule the Mother's arguments and affirm the trial court's judgment.

## BACKGROUND

The Mother has six children, but only two of them are in her care. The First Child lives with a grandmother. The Second Child and the Third Child live with the Mother. The Fourth Child and the Sixth Child live with different families because the Mother's rights to each of them were previously terminated in separate proceedings. The Fifth Child is the subject of this case, and she has lived continuously with the Caregiver for four years, ever since she left the hospital at birth.

The Department originally moved to terminate the Mother's parental rights to the Fifth Child. In that same original petition, the Department also sought to terminate the parental rights of an alleged father and of a separate "unknown father." The record does not reveal that the Department ever amended this petition, but in subsequent filings, the Department represented to the trial court that the Mother had been cooperative, and a court-appointed advocate similarly recommended that the Mother's parental rights should not be terminated. The attorney ad litem for the Fifth Child disagreed with that recommendation and separately moved to terminate the Mother's parental rights.[1]

In 2021, shortly before the Fifth Child's second birthday, the trial court rendered a final decree terminating the parental rights of the unknown father (the "2021 Decree"). In that same decree, the trial court appointed the Department as the sole managing conservator and the Mother as the possessory conservator, effectively

---

[1] *See* Tex. Fam. Code § 107.008(b) ("An attorney ad litem or an attorney appointed in the dual role who determines that the child cannot meaningfully formulate the child's expressed objectives of representation may present to the court a position that the attorney determines will serve the best interests of the child."); *In re J.M.R.C.*, No. 14-22-00681-CV, 2023 WL 2551496, at *1 (Tex. App.—Houston [14th Dist.] Mar. 17, 2023, pet. denied) (mem. op.) (acknowledging that an attorney ad litem may petition for the termination of parental rights, even when the Department opposes termination).

denying the attorney ad litem's motion for termination. The trial court made no findings regarding the alleged father.

Several months later, when the Fifth Child was two years old, the attorney ad litem filed a combined motion to modify the 2021 Decree and motion to terminate the Mother's parental rights. The Caregiver intervened and sought the appointment as sole managing conservator. The Department opposed the termination but likewise sought the appointment of the Caregiver as sole managing conservator.

The case proceeded to a nonjury trial in 2024, when the Fifth Child was four years old, and at its conclusion, the trial court signed another decree of termination, finding clear and convincing evidence to support predicate grounds (E), (F), and (M), and further finding that termination of the Mother's parental rights was in the best interest of the Fifth Child (the "2024 Decree"). *See* Tex. Fam. Code § 161.001(b)(1)(E) (endangerment by conduct); Tex. Fam. Code § 161.001(b)(1)(F) (failure to support the child); Tex. Fam. Code § 161.001(b)(1)(M) (termination of rights regarding a different child based on an endangerment finding).

The Mother now appeals from the 2024 Decree.

## MATERIAL AND SUBSTANTIAL CHANGE

The Mother contends that "this is a modification suit," and that the 2024 Decree must be reversed because the trial court never made a finding of a material and substantial change in circumstances, which is necessary to sustain a modification under Section 156.101 of the Texas Family Code. The Mother also contends that, even if the trial court had made such a finding, there is no evidence to support it.

The Mother's argument is not precise. While Section 156.101 does govern modification proceedings—along with Chapter 156 more generally—it does not apply to termination proceedings, which are governed instead by Chapter 161. *See*

*In re A.M.*, 451 S.W.3d 858, 861 (Tex. App.—Dallas 2014, no pet.) ("Section 156.101(a)(1)'s requirement of a material and substantial change for modification of an order establishing conservatorship or possession and access does not apply to a suit for termination of parental rights.").

But there is a provision in Chapter 161 that is similar to Section 156.101. That provision states that if a trial court has already rendered an order denying a petition to terminate the parent-child relationship, then the trial court may terminate the parent-child relationship if, among other conditions, "the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered." *See* Tex. Fam. Code § 161.004(a)(2); *see also In re A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (further explaining that Section 161.004 applies when the party moving for the termination relies on proof of a predicate act that predates the earlier decree, and contrasting that burden when a termination is sought instead under Section 161.001). That provision applies here because the trial court denied the attorney ad litem's motion to terminate in the 2021 Decree.

The 2024 Decree—i.e., the judgment that is under review now—does not contain an express finding of a material and substantial change in circumstances, as the Mother correctly observes. Nevertheless, a finding of a material and substantial change in circumstances is implied by the trial court's decision to render a termination. *See In re Z.S.A.*, No. 01-22-00575-CV, 2023 WL 138872, at *2 (Tex. App.—Houston [14th Dist.] Jan. 10, 2023, no pet.) (mem. op.) (similarly recognizing that the finding was implied). Thus, we must consider whether the record supports that implied finding.

4

There are no definite guidelines as to what constitutes a material and substantial change in circumstances under Section 161.004. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). But by way of example, this court has determined that a material and substantial change existed when the parent was adjudicated guilty of a crime and sentenced to prison after the prior order, *see In re C.A.C.*, No. 14-12-00396-CV, 2012 WL 4465234, at *9 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op.), and when a parent failed to complete a service plan by failing to visit the child and attend medical appointments, *see In re M.J.W.*, No. 14-16-00276-CV, 2016 WL 4206046, at *8 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, pet. denied) (mem. op.).

In this case, the 2021 Decree was rendered on September 24, 2021. The undisputed evidence also established that, six months later, on February 23, 2022, the Mother's parental rights to the Sixth Child were terminated based on findings that she had endangered the Sixth Child and that she had failed to comply with a service plan.

Consistent with our prior precedent, we conclude that the circumstances of the Mother materially and substantially changed when her rights to the Sixth Child were terminated, and therefore, the trial court's implied finding is supported by the evidence.[2]

## TERMINATION FINDINGS

To terminate the parent-child relationship, the trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the trial court must

---

[2] The attorney ad litem filed his second motion to terminate in this case on June 30, 2022, four months after the Mother's parental rights to the Sixth Child were terminated. The Mother challenged that termination in an appeal to this court, but we rejected her challenge and affirmed the lower court's judgment. *See S.L. v. Dep't of Family & Protective Servs.*, No. 14-22-00194-CV, 2022 WL 4103250 (Tex. App.—Houston [14th Dist.] Sept. 8, 2022, pet. denied) (mem. op.).

find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that a parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). If the trial court finds such a predicate ground for termination, the trial court must then find by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

The trial court here made findings under predicate grounds (E), (F), and (M). The Mother challenges each of those findings, plus the trial court's best-interest finding.

We begin with the Mother's challenge under predicate ground (E). If the evidence is sufficient to support that finding, then we need not consider her challenges to the remaining predicate findings. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that a termination is in the child's best interest."); *see also In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (explaining that due process requires a consideration of predicate ground (E) because it can have significant collateral consequences in future termination proceedings involving different children).

## I.     Predicate Ground (E)

To support a finding under predicate ground (E), the attorney ad litem had the burden of showing that the Mother has "engaged in conduct . . . which endangers the physical or emotional well-being of the child." *See* Tex. Fam. Code § 161.001(b)(1)(E). The attorney ad litem was also required to carry this burden by clear and convincing evidence, which is greater than the simple preponderance standard that applies more commonly in civil cases. *See* Tex. Fam. Code § 161.001(b)(2). Under the standard for clear and convincing evidence, the measure

or degree of proof must produce in the mind of the trier of fact a firm belief or conviction that the allegation sought to be established is true. *See* Tex. Fam. Code § 101.007. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

When reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* This standard does not mean that we disregard all evidence that does not support the finding. *Id.* When deciding whether the finding is supported by clear and convincing evidence, we must also consider undisputed evidence contrary to the finding. *Id.*

In a factual-sufficiency review, we give due consideration to both the disputed evidence contrary to the finding as well as all of the evidence favoring the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have formed a firm belief or conviction. *Id.*

The attorney ad litem's evidence of endangerment focused on the Mother's criminal history, which was extensive. That history began in 2007, when she was arrested for forgery at the age of seventeen and eventually sentenced to two years of confinement.

The Mother gave birth to the First Child in 2008. Then in 2009, she was charged with four burglaries of a habitation. She pleaded guilty to two of those

burglaries and was sentenced to five years of confinement. The remaining two charges were dismissed.

In 2015, the Mother was arrested for theft. She was sentenced for that offense, but the record does not contain a copy of the judgment of conviction, and other documents in the record are conflicting regarding the length of her sentence. One document states that she was sentenced to 14 days of confinement, whereas a separate document states that the duration was 140 days.

Also in 2015, the Mother gave birth to the Second Child. She was then arrested for prostitution, for which she was sentenced to thirty days in jail, and then again for theft, for which she was sentenced to seventeen days in jail.

In 2016, the Mother gave birth to the Third Child. Four months after the birth, she was arrested for failing to identify to a police officer, for which she was sentenced to three days in jail. And one month after that, she was arrested for theft, for which she was sentenced to six months in jail.

In 2018, the Mother committed another theft, for which she was sentenced to another term of six months of confinement. While she was in custody, she gave birth to the Fourth Child.

In 2019, the Mother was charged with tampering with evidence. She pleaded guilty to that offense and was sentenced to two years of confinement. But she served only three days, and the rest was probated. Later, the trial court extended the duration of her probation by one year.

Before she pleaded guilty in the tampering case, the Mother gave birth to the Fifth Child, who is the subject of this case. Two weeks after the birth, the Mother committed another theft. She pleaded guilty to that offense and was placed on deferred adjudication for a period of ten years.

In 2020, the Mother gave birth to the Sixth Child. Four months later, in 2021, one of the Mother's hair follicles tested positive for cocaine.

None of these offenses was directed specifically at the Fifth Child, but the predicate ground for endangerment does not require that the parent's conduct be so directed, or that a child actually suffer injury. *See In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022). Rather, endangerment can be inferred from the parent's misconduct alone, and misconduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re V.A.*, 598 S.W.3d 317, 331 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Most of the Mother's criminal offenses were committed before the Fifth Child was born, but a court may consider actions and inactions occurring both before and after a child's birth when assessing whether a parent has engaged in conduct that endangers a child's well-being. *See In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The evidence here established that the Mother engaged in such conduct—both before and after the Fifth Child's birth—and that this conduct has resulted in multiple incarcerations. Also, the evidence established that, at the time of trial in 2024, the Mother had spent half of her life (and the entirety of her adult life) either in incarceration or under probation. The trial court could have reasonably concluded that the Mother's course of criminal conduct and its resulting incarcerations endangered the Fifth Child's well-being by subjecting her to a life of uncertainty and instability. *See In re J.J.L.*, 578 S.W.3d 601, 612 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Routinely subject a child to the probability [she] will be left alone because [her] parent is in jail endangers the child's physical and emotional well-being.").

The Mother argues on appeal that her criminal history is insufficient to support an endangerment finding because her offenses did not increase in severity and

because the most significant periods of incarceration occurred before the birth of the Fifth Child. The Mother also minimizes the evidence of her drug use, pointing out that she has not tested positive for illicit substances since 2021, and in similar manner, that she has not had any recent criminal charges. But "a parent's short-term, positive, post-incarceration behavior does not nullify earlier endangering conduct such that the trier of fact must set the earlier conduct aside." *See In re J.F.-G.*, 627 S.W.3d 304, 316 (Tex. 2021).

The Mother also argues that her convictions for prostitution and failure to identify should not be considered because they are nonviolent misdemeanors. *See* Tex. Fam. Code § 161.001(c)(3). But even if we excluded those two offenses from our analysis, the evidence still demonstrates that the Mother engaged in a pattern of criminal conduct and repeatedly risked separation from all of her children.

Considered in the light most favorable to the judgment, the evidence is legally sufficient to support the trial court's finding that the Mother has engaged in conduct that endangers the Fifth Child's physical or emotional well-being. Further, in view of the entire record, we conclude that any disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted because of the Mother's endangerment. Accordingly, we conclude that the evidence is legally and factually sufficient to support the trial court's finding under predicate ground (E). *See In re Z.N.M.*, No. 14-17-00650-CV, 2018 WL 358480, at *6 (Tex. App.—Houston [14th Dist.] Jan. 11, 2018, no pet.) (mem. op.) ("The record establishes Father's illegal drug use, his harmful and irresponsible choices leading to repeated imprisonment, his lack of parenting until the Department located him, and a child left in the Department's care because Father was in jail. In terminating Father's parental rights, the trial court reasonably credited the evidence

of the parenting void in Zoe's life and Father's inability to safeguard her physical and emotional well-being.").

This conclusion likewise means that we need not consider the Mother's remaining arguments that the evidence is legally and factually insufficient to support the trial court's findings under predicate grounds (F) and (M). *See* Tex. R. App. P. 47.1; *In re P.W.*, 579 S.W.3d 713, 728 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

## II.     Best Interest

We now consider whether the evidence is legally and factually sufficient to support the trial court's other finding that termination of the Mother's parental rights was in the best interest of the Fifth Child.

No specific set of facts is required to establish that termination is in the best interests of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include (1) the desires of the child; (2) the child's emotional and physical needs; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child: (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in

11

evaluating a parent's willingness and ability to provide the child with a safe environment).

**The Child's Desires.** The trial was conducted when the Fifth Child was only four years old. Because she did not testify, there is no direct evidence of the Fifth Child's desires.

When there is no direct evidence of a child's desires, the factfinder may consider the child's relationship with her natural family and whether the child has bonded with her foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The evidence established that the Fifth Child is very bonded with the Third Child, who was also raised by the Caregiver for some time. The Fifth Child asks about the Third Child, but she does not ask about the Mother, who has missed several of her visitations.

The Fifth Child is also very bonded with the Caregiver. She even refers to the Caregiver as her mother.

**The Child's Needs.** The Fifth Child was born prematurely, but she does not have any special needs, aside from asthma, which the Caregiver is already treating. The Fifth Child is currently thriving in pre-kindergarten, and has been described as a social butterfly.

**Dangers to the Child.** The Mother's criminal history is evidence of endangerment because, as explained above, her repeated incarcerations have subjected the Fifth Child to a life of uncertainty and instability. Even though the Mother has no recent arrests or convictions, she still remains under deferred adjudication community supervision through 2031. Also, there is evidence that after the birth of the Fifth Child, the Mother posted on Facebook under a pseudonym that

she could falsify certain documents for a fee, including social security cards, W-2s, and check stubs. That evidence indicates that the Mother may still be involved in criminal activity.

The Mother's peers are also some evidence of endangerment. The Mother admitted that she used to associate with people who used cocaine. She also admitted to having a continuing relationship with the alleged father, who—despite never having harmed the Fifth Child—once assaulted the Mother and broke her jaw just five months before the Fifth Child was born.

*Parental Abilities.* The Mother currently has the Second Child and the Third Child in her care. Both of those children are very doing well in school, and the caseworker has no concerns about the Mother's ability to provide for those children. However, the Mother also has an older child who is still a minor and in the care of a grandparent. And the Mother has had her parental rights terminated as to two other children, both on multiple grounds, including endangerment.

The Caregiver has already raised two biological children to adulthood. She has also fostered or cared for many other children, including the Third Child.

*Programs.* There was no mention of any programs available to the Mother to specifically assist her in caring for the Fifth Child and promoting her best interests. However, the Mother indicated that she is already familiar with Medicaid and SNAP, which assist her in caring for the Second Child and the Third Child.

*Plans.* The Mother testified that she loves her children, but she did not express interest in having managing conservatorship of the Fifth Child. Rather, she wished to maintain the status quo as the possessory conservator.

13

The Caregiver wants to adopt the Fifth Child. The Caregiver testified that if her request were granted, she would still allow the Fifth Child to visit the Third Child. She would also allow visitations with the Mother under supervised conditions.

***Stability of the Home.*** The Mother testified that she has an apartment. However, she stated that she is recently unemployed, though she indicated that she would be starting a new job in a month.

The Mother questioned the stability of the Caregiver's home because the Caregiver's license to foster was briefly suspended following an allegation of negligent supervision. But after an investigation, the allegation was dismissed and the license was restored. As indicated above, the Mother has still requested that the Caregiver be the primary custodian of the Fifth Child.

***Any Other Considerations.*** During closing statements, the Mother argued that she was entitled to the parental presumption that she would act in the best interest of the Fifth Child. But that presumption applies in a case where a party is seeking to modify a previous order in which a fit parent has been appointed as managing conservator. *See In re C.J.C.*, 603 S.W.3d 804, 808, 819 (Tex. 2020) (orig. proceeding). The Mother was not appointed as a managing conservator in the 2021 Decree. To the contrary, the trial court found that her appointment as managing conservator would not be in the best interest of the Fifth Child. Thus, the Mother was not entitled to the parental presumption.

Altogether, the evidence provided the trial court with a substantial basis for doubting whether the Mother has the ability to provide the Fifth Child with a safe and stable living environment. Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis, and viewing all of the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable factfinder

14

could have formed a firm belief or conviction that termination of the Mother's parental rights was in the best interest of the Fifth Child.

## MANAGING CONSERVATOR

The trial court appointed the Department as the sole managing conservator of the Fifth Child, effectively denying the modification requests from the Caregiver and the Department. Even though the Mother did not seek the appointment of managing conservator, she now challenges the trial court's failure to make that appointment in her favor. She relies on Section 153.131 of the Texas Family Code, which provides that a parent must be appointed as a managing conservator unless "the appointment would significantly impair the child's physical health or emotional development." *See* Tex. Fam. Code § 153.131(a). The trial court made a finding of significant impairment, but the Mother argues that there is no evidence to support it, and thus, that the trial court abused its discretion by appointing the Department as managing conservator instead of her.

The Mother's argument lacks merit. When a parent's rights are terminated, as the Mother's rights were here, Section 153.131 does not control. Instead, the trial court must abide by Section 161.207, which provides that "if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." *See* Tex. Fam. Code § 161.207(a). The trial court here complied with this statute when it terminated the Mother's parental rights and appointed the Department as managing conservator. And because we have concluded that there is legally and factually sufficient evidence to support the trial court's termination findings, we conclude that the trial court's appointment of the Department as managing conservator was not an abuse of discretion. *See In re M.F.M.*, No. 14-23-00974-CV,

15

2024 WL 3156150, at *10 (Tex. App.—Houston [14th Dist.] June 25, 2024, pet. denied) (mem. op.).

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
       Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.